UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHANE HUDECEK,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

                Defendant.

No. CASE NO. C08-5340BHS

REPORT AND RECOMMENDATION

Noted for May 1, 2009

This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, Secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court affirm the administration's decision.

<u>INTRODUCTION AND PROCEDURAL HISTORY</u>

Plaintiff, Shane Hudecek, was born in 1953. She obtained a general education diploma, and she has taken classes for cosmetology training. Most recently she worked as a real estate agent. Ms. Hudececk has past experience working as a secretary/administrative assistant,

REPORT AND RECOMMENDATION - 1

cosmetologist, beauty supply store manager, census worker, newspaper delivery person, taxicab driver, tavern bartender, and as a real estate salesperson (Tr. 135-42). The evidence indicates that she has actively engaged in prostitution (Tr. 21, 317-22). Ms. Hudecek was 47 years old when she alleged that she became disabled in 2001 (Tr. 549). She alleges disability due to depression, personality disorder, and post-traumatic stress disorder. Plaintiff's Opening Brief at 2.

Ms. Hudecek, previously filed an application for Supplemental Security income (SSI) disability benefits under Title XVI of the Social Security Act (Act) on April 12, 2002, and an application for a period of disability and disability insurance benefits (DIB) under Title II of the Act on May 21, 2002 (Tr. 19, 540-41). In both applications, she alleged that she had been disabled since September 1999 (Tr. 19). Her claims were denied initially on July 26, 2002 (Tr. 19). She did not appeal the denials (Tr. 19).

On October 15, 2003, the claimant filed her current applications for DIB and for SSI disability benefits (Tr. 19). In both applications, she alleged disability beginning August 25, 2001 (Tr. 19). The claims were denied initially and on reconsideration (Tr. 19). The claimant filed an untimely request for a hearing before an ALJ (Tr. 19). Good cause was found for the late filing, and an administrative law judge ("ALJ") conducted the hearing on September 21, 2006, in Seattle, Washington (Tr. 19, 571-603).

On October 19, 2006, the ALJ issued a decision unfavorable to the claimant. He noted that the claimant had not provided new and material evidence to support reopening the prior denials, and that, therefore, the prior denials were administratively final (Tr. 19). 20 C.F.R. § 404.987ff (2008). Accordingly, the relevant period under consideration began the day after the prior final decision, on July 27, 2002. The ALJ found that the claimant had not been under a

REPORT AND RECOMMENDATION - 2

"disability," as defined in the Social Security Act, from July 27, 2002 through the date of his decision (Tr. 16-30). The Appeals Council denied the claimant's request for review, making the ALJ's decision the Commissioner's final decision that is subject to judicial review. 20 C.F.R. §§ 404.1481, 416.981, 422.210.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir.2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. Id.

Plaintiff bears the burden of proving that he or she is disabled within the meaning of the Social Security Act (the "Act"). Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if his or her impairments are of such severity that he or she is unable to do her previous

work, and cannot, considering his or her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is summarized as follows. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits the claimant's physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, the claimant has the residual functional capacity to perform his or her past work. Finally, if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work the claimant could perform.

Plaintiff has the burden of proof as to the first four steps; the Commissioner has the burden of proof on the fifth and final step. <u>Bowen</u>, 482 U.S. at 146 n. 5. The final or fifth step of

REPORT AND RECOMMENDATION - 4

the process is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460 (1983).

Here, Plaintiff argues, in her Opening Brief, the ALJ's decision is not properly supported and the ALJ committed the following specific errors during the five-step evaluation process:

1. The ALJ committed legal error by failing to find that Ms. Hudecek's gamekeeper's thumb, rheumatoid arthritis, hearing loss, left shoulder pain, and mental impairments are severe impairments;

2. The ALJ committed legal error by using Ms. Hudecek's activities of daily living to discredit her testimony;

3. The ALJ committed legal error by failing to find that Ms. Hudecek's severe low back condition does not meet or equal a Listing;

4. The ALJ committed legal error by failing to find that Ms. Hudecek's severe mental health conditions do not meet or equal a Listing;

5. The ALJ committed legal error in determining that Ms. Hudecek retains the residual functional capacity to perform her past work as an administrative assistant; and

6. The ALJ committed legal error in not assessing Ms. Hudecek's ability to perform other work that exists in the national economy.

After carefully reviewing the briefing and record, the undersigned finds the ALJ properly considered Plaintiff's alleged limitations and rejected them. Plaintiff's credibility is a significant issue. There is substantial evidence of malingering by the claimant to support the ALJ's decision that Plaintiff is not "severely impaired." Therefore, this court recommends that the District Court affirm the ALJ's decision.

REPORT AND RECOMMENDATION - 5

# DISCUSSION

### A. *The ALJ Properly Discredited Plaintiff's Statements And Allegations Regarding The Severity Of Her Impairments*

Credibility determinations are particularly within the province of the ALJ. Andrews, 53 F.3d at 1043. Nevertheless, when an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific and adequate reasons for doing so. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir.2006). The determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at 1281. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.1991) (*en banc*). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989). When evaluating a claimant's credibility, however, the ALJ "must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints." Greger, 464 F.3d at 972 (*internal quotation omitted*). General findings are insufficient. Smolen, 80 F.3d at 1284; Reddick, 157 F.3d at 722.

Absent affirmative evidence that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1284; Reddick, 157 F.3d at 722. However, if an ALJ finds evidence of malingering, claimants testimony may be rejected using " 'ordinary techniques of credibility evaluation,' " and the ALJ's own observations at the hearing. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th

REPORT AND RECOMMENDATION - 6

Cir.2001) (*quoting* <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 346 (9th Cir.1991)). Ordinary techniques of credibility evaluation include, the claimant's reputation for truthfulness, inconsistencies in testimony and conduct, daily activities, work record, and the testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. <u>Smolen</u>, 80 F.3d at 1284.

Here, there is significant evidence, cited to by the ALJ, concluding that Plaintiff exaggerated her medical symptoms and allegations of disability. The ALJ wrote:

> The claimant has shown a penchant to magnify her symptoms and limitations during examination. In November 2003, Dr. Quint noted a slightly antalgic gait with a slight limp. Yet, he also observed during the examination that she could walk down the hall without a limp, sit comfortably, get on and off the examination table, walk without apparent discomfort or problems with her knees, walk in heel-toe and tandem fashion, and show good balance. Dr. Quint could not test complete range of motion because of poor effort. He noted that the claimant "frequently breathes hard in an exaggerated fashion" (Exhibit 11F).
>
> In August 2006, Dr. Whitehill noted that an administration of the MMPI-2 yielded an invalid profile as a result of excessive symptom endorsement (Exhibit 21F/4).
>
> The record includes investigative evidence that contradicts the claimant's allegations of disabling physical limitations. In February 2004, the Cooperative Disability Investigations Unit conducted an investigation because of possible fraud. The detectives interviewed one witness who had known the claimant since August 2003. The witness reported seeing the claimant "walking around all the time." The witness stated that the claimant was "very mobile" and was "constantly coming and going." The witness recalled seeing the claimant carrying a cane for two days in December 2003, but, after a couple of days, she was walking normal again. The witness had not seen her with a cane since. The witness indicated that the claimant did not have any physical issues and chuckled about the amount of men at her trailer, suggesting that she could not be that physically hurt. The detectives also contacted another witness, who was the claimant's landlord from April to August 2003. The witness reported seeing several men over all the time. The witness recalled that the claimant was always driving and owned a truck that was not always working. The witness reported observing on more than one occasion that the claimant and one of the men had to push the truck through the trailer park to the gate. The witness stated that the claimant complained of having a bad back and would "pretend" to be hurt. When the claimant did not know the witness was watching, she would walk fine and even pick up heavy items. The witness also showed detectives Polaroid photos of

REPORT AND RECOMMENDATION - 7

> the trailer with numerous items around the door. The witness stated that when the claimant was kicked out, she picked up all of the items herself, some of which appeared to be heavy, set them in her truck, and hauled them out of the park. The investigative report concluded that "[b]ased on a preponderance of evidence, there is reason to believe that the claimant knowingly provided false information concerning [her] functional limitations" (Report of Investigation, February 19, 2004.
>
> The claimant's credibility is not enhanced by her testimony at the hearing. The claimant outright denied engaging in prostitution despite her own reports and reports by witnesses suggesting the contrary. She also testified that it was inaccurate that she abused drugs. Yet, in May 2002, the claimant reported using crack approximately one time per week "for years" and using crack cocaine just two weeks prior (Exhibit 13F/34). In August 2002, the claimant indicated that she continued to do drugs recreationally when she could afford them (Exhibit 4F/53). In August 2006, Dr. Whitehill diagnosed cannabis abuse (Exhibit 21F/2). The claimant also has a history of incarceration. In May 2002, the claimant reported recently being incarcerated for several days due to auto theft and drug possession (Exhibit 13F/31).

Tr. 27-28. The ALJ discounted the opinions of Dr. Quint, Dr. Tonder, the State agency medical consultant, and Ms. Chapman (an ARNP) to the extent they relied on Plaintiff's subjective complaints. The ALJ accepted Plaintiff's statements and allegations only to the extent that they were consistent with an ability to perform sedentary work. Tr. 29.

Plaintiff argues that the ALJ improperly relied on the claimant's daily living activities to discredit her allegations of total disability. As noted above, the undersigned is not persuaded by this argument. In addition to the inconsistent statements Plaintiff made regarding her activities, the ALJ relied on the evidence referenced above to properly discredit her allegations of complete disability. Substantial evidence in the record supports the legitimate reasons provided by the ALJ to discount Plaintiff's testimony and allegations.

REPORT AND RECOMMENDATION - 8

***B. The ALJ Properly Evaluated Plaintiff's alleged "Severe" Mental Impairments***

Plaintiff alleges that the ALJ should have found that her diagnoses of gamekeeper's thumb, rheumatoid arthritis, hearing loss, left shoulder pain, and mental impairments were severe impairments.

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996). An impairment is "not severe" if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms of what is "not severe." According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 404.1521(a)(1991). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85-28 ("SSR 85-28"). An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988)(*adopting SSR 85-28*).

Here, the ALJ found that the claimant had "severe" degenerative disc disease, because that impairment caused significant functional limitation in the claimant's ability to perform basic work activities. After reviewing the record, it appears that the ALJ properly found Plaintiff's additional impairments of Gamekeeper's Thumb, left shoulder pain, hearing loss and arthritis were not severe and/or did not meet the twelve-month duration requirement. For instance,

REPORT AND RECOMMENDATION - 9

Plaintiff alleges significant limitations caused by Gamekeeper's Thumb beginning in November 2003, following a fall on her right hand. X-rays showed mild osteoarthritis involving the MCP joint of the right thumb, but no evidence of fracture or arthritic changes in the right hand (Tr. 22, 390-91). Medical records from the Community Health Care Clinic, covering November 2003 through February 2004, reference a referral to a hand specialist and a scheduled surgery to correct the right thumb (Tr. 22, 363-70). However, records from Community Health Care Clinic, covering March 2004 through June 2006, and records from Richard Gray, M.D., covering November 2005 through March 2006, documented no other significant complaints regarding the claimant's hands or thumbs (Tr. 22, 361-64, 473-75, 494-519). Dr. Quint noted occasional manipulative limitations due to right thumb discomfort, but as discussed above, the ALJ discounted Dr. Quint's opinion. Dr. Quint noted that his evaluation was incomplete as Plaintiff would not allow him to touch the right hand or forearm (Tr. 22, 301-08). Moreover, Dr. Quint's one-time evaluation does not provide evidence that Plaintiff's condition has last more than just a few months.

The ALJ similarly found that Plaintiff's alleged hearing loss, left shoulder pain, and arthritis did not support any finding of a severe impairment related to those ailments. For example, Plaintiff reported to Dr. Quint that she had been deaf in the right ear since 1994, when she was hit by a baseball bat. But, Dr. Quint's findings showed the claimant had normal hearing and that he did not have to raise his voice or repeat himself during the examination (Tr. 306).

In March 2006, the claimant reported a new problem with her left shoulder. Dr. Gray diagnosed a rotator cuff tear (Tr. 473). The claimant reported in June 2006 that she was going to have left shoulder surgery, but the record does not provide any evidence of a continuing medical problem. In July 2006, Kathryn Tonder, M.D., the claimant's primary care physician, in a

REPORT AND RECOMMENDATION - 10

physical valuation, did not list the claimant's left shoulder as one of her problems or impairments (Tr. 496, 524-27). Accordingly, the ALJ found insufficient evidence to show that the claimant's left shoulder problem was more than transient.

In July 2006, the claimant reported numbness in the fingers of both hands. Dr. Tonder diagnosed hand pain, rheumatoid arthritis, rated it as marked in severity, and assessed limitations in handling and reaching, she also noted that the diagnosis was pending further evaluation and x-rays (Tr. 522-27). The ALJ noted that records from Dr. Tonder five days later documented no problems with either hand (Tr. 23, 491). The ALJ found insufficient evidence to establish that the problems with the claimant's hands would meet the twelve-month duration requirement.

With regard to Plaintiff's alleged mental impairments, it appears that the ALJ properly considered Plaintiff's mental impairment(s) as non-severe at step-two. The ALJ stated that he found the medical evidence did not consistently corroborate the claimant's allegations of a mental impairment; and therefore, the ALJ did not find any severe mental impairment. Substantial evidence supports the ALJ's decision.

The medical evidence is sporadic and inconsistent. In June 2002, a clinical case manager diagnosed major depressive disorder, recurrent, severe, with psychotic features, PTSD, and cocaine abuse (Tr. 282-86). Plaintiff described herself as being virtually immobilized by her depression, spending most of the day sitting in a chair and staying with a relative who took care of the house. *Id*. In March 2003, Plaintiff reported that her suicidal ideation had resolved, and in April 2003, Peggy Spencer, a mental health counselor, noted that the claimant's depression had improved because she had patched up her relationship with the mobile home park manager, was enjoying her new kitten, and had gotten a computer. Despite the apparent progress, Ms. Spencer diagnosed assessed marked limitation in the ability to exercise judgment and make decisions and

REPORT AND RECOMMENDATION - 11

marked to severe limitations in several social factors (Tr. 25, 292-97). In June 2003, Ms. Spencer stated that Ms. Hudecek's depression had worsened over the possibility of losing benefits from Department of Social and Health Services (DSHS) and having to move again. But by August 2003, Plaintiff claimant reported her depression and anxiety had decreased after settling into a new place. Later that month, Plaintiff further stated she was spending time with her friends and watching her grandchildren.

In September 2003, Ms. Spencer noted Ms. Hudecek was actively engaging in prostitution (Tr. 313-59). Thomas Mitchell, an SSI Facilitator with Northwest Special Services, also interviewed Plaintiff in September 2003. He noted that she was calm throughout the interview, tended to be histrionic in relating her story of having lost a large expensive home and very expensive car, and did not exhibit any behavior that would indicate a depressed mind (Tr. 143-46). However, in December 2003, Plaintiff was examined by Dr. Price, a consultative psychiatrist. After evaluating Ms. Hudecek, Dr. Price diagnosed depressive disorder, recurrent, moderately severe, and rule out PTSD. He assigned a GAF score of 45-50 (moderate symptoms). Dr. Price noted that there was "almost a sense of stubbornly resisting recovery" and that her prognosis was uncertain. Dr. Price stated that she would recover faster if she were treated with more potent and appropriate antidepressants, which she seemed unwilling to take (Tr. 24, 309-12).

Records from Greater Lakes in December 2003 indicated that the claimant was doing well with her diagnosed depression and anxiety, and, in January 2004, Greater Lakes discharged the claimant, noting that she was living independently, trying to get her real estate license renewed, had responded very well to treatment, and had stopped taking her medication.

The record contains no evidence of mental health counseling or evaluations between January 2004 and April 2005. Plaintiff returned to Greater Lakes in April 2005, complaining of depression and isolation. In June 2005, Pamela Sarlund-Heinrich, MA, MHP, diagnosed bipolar II disorder and PTSD. Ms. Sarlund-Heinrich assessed the claimant with marked limitations in her ability to exercise judgment and make decisions, interact appropriately in public contacts, and respond appropriately to and tolerate the pressure and expectations of a normal work setting (Tr. 25, 456-59).

Plaintiff's mood appeared to improve again in September 2005, when she reported that she was doing well with her friends and daughter and was in a stable housing situation. In October 2005, Ms. Spencer commented that the claimant was stable in her current setting and that she had some contact with her daughter. In November 2005, Plaintiff complained about depression because of her upcoming back surgery, but because she never returned for a follow-up session, Greater Lakes discharged the claimant from care in March 2006 (Tr. 25, 396, 421, 426-33).

Finally, in August 2006, Mark B. Whitehill, Ph.D., diagnosed depression NOS, personality disorder NOS, PTSD, and cannabis abuse. He administered the MMPI-II, which yielded an invalid profile "as a result of excessive symptom endorsement (F=120), commonly resulting from severe mental distress, a plea for help, or frank malingering" (Tr. 528-34).

It is Plaintiff's burden to produce evidence sufficient to establish a "severe" impairment at step-two of the administrative evaluation process. The ALJ properly relied on the assessment of Dr. Whitehill to find Plaintiff's credibility undermined most of her allegations regarding her mental impairments (discussed above). The medical evidence shows a very inconsistent pattern of behavior, and it is best understood when viewed in light of Plaintiff's credibility and Dr.

Whitehill's conclusion that Plaintiff often exaggerated and lied about her symptoms. The ALJ stated the same in his opinion, noting the inconsistent medical reports and discrediting Plaintiff's subjective complaints and those medical opinions that relied primarily on her subjective statements. In sum, substantial evidence supports the ALJ's finding that Plaintiff does not suffer from a "severe" mental impairment.[1]

### C. The ALJ Properly Evaluated Plaintiff's Spine or Back Impairment

The claimant bears the burden of proving that she has an impairment that meets or equals the criteria of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1 (the Listings). Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2004). When a claimant's impairment or combination of impairments meets or equals the level of severity described in the Listing, and also meets the duration requirement, she will be found disabled on the basis of the medical facts alone in the absence of evidence to the contrary (e.g., the actual performance of SGA, or failure to follow prescribed treatment without a justifiable reason). The claimant's impairments must meet or equal a listed impairment for a favorable determination or decision to be based on medical considerations alone. A bare assertion of limitations is not sufficient to support a claim of listing-level severity. Lewis v. Apfel, 236 F.3d 503 (9th Cir. 2001)(ALJ decision affirmed because the claimant had not been compliant with medication.); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999) (a generalized assertion of functional problems is not enough to establish disability at step three).

Here, the ALJ found, "The medical evidence indicates that the claimant has a history of back problems, an impairment that is severe within the meaning of the Regulations but not severe enough to meet or medically equal to the criteria of section 1.04 listing in Appendix 1,

---

[1] Having found that the ALJ properly did not find a "severe" mental impairment at step-two, the court will not address Plaintiff's contention that the ALJ failed to properly satisfy the remaining requirements.

REPORT AND RECOMMENDATION - 14

Subpart P, Regulations No. 4." (Tr. 26). Plaintiff maintains her back impairment(s) meet or medically equal Listing 1.04 of the musculoskeletal system.

Listing 1.04 provides as follows:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, appx. 1, § 1.04.

The undersigned finds no reference in the record of any compromise or compression of the nerve root, arachnoiditis, or pseudoclaudication. The ALJ summarized the medical evidence in his decision (Tr. 26), which reflects ongoing back pain and treatment. However, the record does not support a finding that Plaintiff's back impairment meets or equals Listing 1.04. For instance, the inability to ambulate effectively is defined as "an extreme limitation of the ability to walk." 20 C.F.R. 404 Appx. 1 Sub. P, 1.00B2b. In contrast, the record shows Plaintiff is able to ambulate effectively. Based on the foregoing, the undersigned finds Plaintiff did not meet her burden of showing that the medical findings related to his musculoskeletal system impairment(s) equal in severity and duration to Listing 1.04.

    *C.    The ALJ Properly Evaluated Plaintiff's Residual Functional Capacity*

REPORT AND RECOMMENDATION - 15

"[R]esidual functional capacity" (RFC) is "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. § 404, Subpart P, App. 2 § 200.00(c) (emphasis added). In evaluating whether a claimant satisfies the disability criteria, the Commissioner must evaluate the claimant's "ability to work on a sustained basis." 20 C.F.R. § 404.1512(a). The regulations further specify: "When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis." Id. at § 404.1545(b). If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted. 20 CFR § § 404.1527, 416.927.

Plaintiff's RFC was assessed by the ALJ as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift/carry 10 pounds occasionally and five pounds frequently, stand/walk two hours in an eight-hour workday, and sit six hours in an eight-hour workday. The claimant should have routine breaks within the normal workday to allow for stretching and changing positions.

Tr. 26. The ALJ further explained that in making this finding he reviewed Plaintiff's credibility, lay witness statements and the medical opinions. Tr. 28.

Plaintiff argues the ALJ's RFC finding does not address or include all of her limitations. Plaintiff's argument is premised in large part on the contention that the ALJ erred when he evaluated the medical evidence (the severity of her back impairment and mental limitations) and Plaintiff's testimony. As discussed above, the ALJ properly considered the medical evidence and he discounted or rejected certain opinions relied on by Plaintiff to make this argument. Likewise, the ALJ properly considered and discounted Plaintiff's testimony, as well as the medical opinion evidence that relied on Plaintiff's subjective complaints, that would support greater limitations than concluded by the ALJ.

After reviewing the record and ALJ's RFC finding, the undersigned finds that it is supported by substantial evidence.

### D. The ALJ Properly Completed Step-Four Of The Administrative Process

At step four, a claimant has the burden of showing that he or she can no longer perform past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir.1990). Once the claimant has shown this, the burden at step-five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, the claimant can perform substantial gainful work in the national economy. 20 C.F.R. §§ 404.1520(f) and 416.920(f); Moore v. Apfel, 216 F.3d 864, 869 (9th Cir.2000).

Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion. SSR 82-62. See 20 C.F.R. §§ 404.1571 and 416.971, 404.1574 and 416.974, 404.1565 and 416.965. This is done by looking at the "residual functional capacity and the physical and mental demands" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(e) and 416.920(e). The claimant must be able to perform:

1. The actual functional demands and job duties of a particular past relevant job; or

2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy. SSR 82-61. This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work. SSR 82- 62.

Pinto v. Massanari, 249 F.3d 840, 844-845 (9th Cir. 2001).

Here, the ALJ found Plaintiff retained the ability to perform past employment, working as an administrative assistant. Plaintiff argues the ALJ erred because he failed to incorporate (1) Dr. Virgi and Dr.Quint's opinions that reflect Plaintiff's handling, fingering, and manipulative limitations, and (2) Plaintiff's non-exertional limitations, which would preclude her from performing this type of job.

REPORT AND RECOMMENDATION - 17

The ALJ specifically discounted the opinions of Dr. Quint, Dr. Tonder, and the State agency medical consultant (Dr. Virji) "to the extent they rely on any impairment with respect to the claimant's hands." Tr. 29.  As noted above, the ALJ discounted any medical opinion that relied on Plaintiff's untrustworthy statements.   There is substantial evidence that Plaintiff's hand or fingering limitation, if any, is not severe.  Moreover, at the hearing the vocational expert considered Plaintiff's testimony and the ALJ's RFC, and the vocational expert was asked about Plaintiff's past work as an administrative assistant.  The vocational expert described the work as sedentary type work. Tr. 600-601.  The court finds no error in the ALJ's assessment of plaintiff's past relevant work and her retained capacity to perform work as an administrative assistant.[2]

## CONCLUSION

Based on the foregoing discussion, the Court should affirm the administrative decision.  Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 1, 2009**, as noted in the caption.

DATED this 7th day of April, 2009.

J. Richard Creatura
United States Magistrate Judge

---

[2] Having found the ALJ properly concluded Plaintiff retained the ability to perform past relevant work at step-four in the administrative process, the court will not address Plaintiff's contention that the ALJ failed to complete step-five.

REPORT AND RECOMMENDATION - 18